Edward Malfetano
vs. }No. 84470.
United Electric Railways Co.

March 16, 1932.

For plaintiff: Curran, Hart, Gainer & Carr.

For defendant: Clifford, Whipple, Sweeney.

Loretta Malfetano, p. a.
vs. }No. 84471.
United Electric Railways Co.

March 16, 1932.

CHURCHILL, J. Heard on motion of the defendant for a new trial after a verdict for plaintiff for $10,000 in an action of negligence.

Loretta Malfetano, a girl of about six years of age at the time, was involved in an accident with an electric car on December 6, 1929, between 7:30 and 7:45 P. M. The scene of the accident was on the west side of Elmwood Avenue some 78 feet south of Longfellow Street. The car tracks in that vicinity run approximately north and south.

It is the contention of the plaintiff that, while standing between the car tracks, she was struck by an outbound car and that the operator of the car had ample time in which to see the plaintiff in such a position of danger and was negligent in not taking precautions which would have prevented the accident.

On the motion for a new trial defendant contended, first, that the great weight of the testimony shows that the plaintiff was not standing between the tracks but, as a matter of fact, ran into the car, and, further, that the doctrine of the last clear chance does not apply for the reason that there is no testimony showing that the operator of the electric car knew of the dangerous situation occupied by the plaintiff in time to stop the car by the exercise of reasonable care on his part.

The car tracks on Elmwood Avenue at the place of the accident run in a location wihch is separated from the travelled portion of the avenue on its east side by a strip of grass which is curbed on its outer side. This strip is approximately 6 feet wide. Between Longfellow Street and the scene of the accident are two large trees located on the strip to the east of the car tracks, the tree nearest to the scene of the accident being some 32 feet distant.

The plaintiff's father, Edward Malfetano, started from his home in his automobile to take his daughter and her friend, Louise Barry, to a play at the schoolhouse on Sackett Street. Before going to the school occasion arose to go to friends living at 803 Elmwood Avenue. The father drove down Elmwood Avenue from the south, turned at Longfellow Street and then proceeded southerly on the right hand side of Elmwood Avenue and stopped his automobile at a point opposite 803 Elmwood Avenue and close to the outer curb. It was necessary,

therefore, for anyone leaving the automobile, in order to reach the house, to cross the car tracks at this point. The night was dark and Loretta was dressed in dark clothing.

The father testified that just as he stopped the automobile, he looked in his mirror and saw no electric car approaching; that after looking in the mirror, he turned and looked through the rear wndow of his car and at that time no electric car was in sight; that he then opened the door of the automobile, pulled the front seat over, and both girls got out and started to walk towards the house; that Loretta stopped about one foot inside the easterly rail of the car tracks and stood there while Louise came back to the automobile, entered, got a sheet which she had left in the automobile, got out again and started to go to the house; that while he, Edward, was starting to leave the automobile, with both feet on the runningboard, he looked back and saw an electric car coming. "I looked back probably 25 or 30 feet, and I saw the car coming." He called to his daughter and at that time she was "looking towards the right in a kind of side view. She was facing diagonally, as between the house and Park Avenue" with the back of her head towards the witness. The witness further said that she turned her head towards her right, "didn't turn much, and was struck by the car when standing about one foot inside of the outer car rail and was carried along between 30 and 35 feet;" that the witness did not see her as she was struck but picked her up about that distance from the place where she was standing, and that when he reached her "her back was lying right on the rail."

This witness further testified that the electric car, when he saw it, was going 30 to 35 miles an hour and that the motorman at the time he saw him had his face turned towards the right

and towards someone standing in the vestibule of the electric car.

Louise Barry, who was between 11 and 12 years old at the time of the accident, testified as to the position of Loretta, her own return to the car, the approach of the electric car and the accident, but did not testify as to the speed of the electric car or the position of the motorman.

The operator of the electric car testified that he put the car in low speed at Longfellow Street with the power shut off. After crossing Longfellow Street, he then put on the power and applied it "notch by notch," and that as he approached the scene of the accident he judged his speed was 8 to 9 miles an hour; that as he "approached the street, the first thing I happened to notice was this child and another child in back; my front end of my car had gotten by when I heard a thump on the side of the car."

In direct examination, the operator said, in answer to a question as to whether the car was moving or stopped, "I couldn't really say. It was like a flash. It looked to me as if she was coming right towards the car;" and in cross-examination said: "Well, as I approached the tree, the first thing I saw was this little girl showing from in back of the tree. I saw her coming from in back of the tree. I throwed off everything and the child must have struck the side of the car, for I heard a bump and I stopped and throwed everything into the emergency." He denied that he was talking with anyone in the vestibule of the electric car just prior to the accident and in that he was corroborated by an employee of the defendant who was in the vestibule of the car at the time.

One passenger, seated about two or three seats from the front on the left hand side of the car, stated that the car was going at a moderate rate of speed; that he saw "something dart from the Elmwood Avenue side, heard

a thump near the front end of the car and the car was stopped immediately," and then he "saw a man with something in his arms near an automobile."

A letter carrier, who was a passenger on the car, testified that the car was going at a moderate rate of speed; that he heard a thump on the left hand side of the car; that the car was stopped immediately, and that he saw a child lying near the curb at a point about the middle of the car when the car came to a stop.

In view of this conflict in the testimony it becomes necessary to take into consideration the nature of the injury sustained by the plaintiff. Her claim is that she was struck by the electric car, travelling at a high rate of speed, while she was standing between the tracks with her back turned in the direction from which the car was approaching.

Dr. Bolster was the attending physician at St. Joseph's Hospital, to which institution the child was immediately carried after the accident. He testified that there was laceration of the right scalp two and a half inches long, a mangled left hand and a contusion of her left hip. When questioned, he stated he could not recall whether or not the plaintiff's back was bruised or otherwise injured, and then stated that the hospital record would show what the injuries were in this respect. The hospital record was in evidence and did not disclose any injury to the back.

The hospital record disclosed that the head showed no evidence of violence other than that indicated by a bandage which was soaked with blood. There was no fracture of the skull. There were no marks of violence on any other part of the body except the left hand which was badly mangled, apparently having been run over by a wheel of the electric car. There was some tenderness on the right hand side of the abdomen but no marks of in-jury and no extreme tenderness noted. The right hand and arm were normal.

The electric car involved in this accident was 41 feet long, 8 feet and 1 inch wide. The car had an overhang of a foot and eight inches and as the plaintiff, according to the testimony given on her behalf, was standing one foot inside the rail she would have sustained the full force of the impact of the car, being struck by a part of the car two feet and eight inches in from the left hand corner. The striking force of a car of this size, even going at a much less rate of speed than 30 miles an hour, would be great and when exerted directly against the body of the plaintiff standing between the tracks and with her back turned towards the approaching car, would have produced an effect, in all human probability, far different from what was actually suffered by the plaintiff. A significant and compelling fact is that the child's back was not injured. The right side of the body had no injury except the tenderness noted in the hospital report.

The plaintiff argues that it is impossible to say what would happen if Loretta was struck by the car in the manner claimed and points out various possibilities which might ensue in such a case, such as being thrown to one side and falling alongside the track with her left hand on the rail; falling in front and having the car pass over her, and other conjectural situations, but when all is said, the fact remains that whatever way the child might be thrown in such a contingency, the effect of the blow given by the car even going at a moderate rate of speed would have been far different in kind and degree from the injuries which were received.

A verdict must have a reasonable basis on which to stand and in weighing the probabilities, the Court is entitled to take into consideration phy-

sical facts which are established beyond peradventure.

*Whalen* vs. *Dunbar*, 44 R. I. 136.

In view of the character of the injuries, taken into consideration with the disinterested evidence given by passengers on the car, it appears by the weight of the testimony that the plaintiff was not standing between the rails when struck but ran into some part of the electric car.

The verdict is not supported by the weight of the evidence but is, in fact, against the preponderance of the evidence.

To make the record complete, it is sufficient to say that the verdict is not excessive. The plaintiff lost the greater part of her left hand, the injuries making amputation necessary.

Motion for new trial is granted.